[Civ. No. 28533. First Dist., Div. Two. Dec. 20, 1971.]

E. J. GARAVATTI et al., Plaintiffs and Appellants, v.
FAIRFAX PLANNING COMMISSION, Defendant and Respondent.

## COUNSEL

Aiken, Kramer & Cummings, Fred V. Cummings, Nelson, Boyd, Menary & MacDonald and David Menary, Jr., for Plaintiffs and Appellants.

Myers, Praetzel & Garetz and Wallace S. Myers for Defendant and Respondent.

## OPINION

**KANE, J.**—Plaintiffs appeal from the trial court's order denying a writ of mandamus to compel respondent to set aside its order forbidding the night-time operation of their grocery store.

Appellants E. J. Garavatti and Harold Garavatti are the owners and appellant Short Stop, Inc., is the lessee of a certain parcel of improved real property located in the "C or Commercial District" of the City of Fairfax, zoned by city Ordinance No. 230.

On July 27, 1967 appellants applied for a special use permit for the construction and operation of a food store upon their property. They represented in their application that the store would be open from 7 a.m. to 11 p.m. On September 11, 1967, the city council granted the application upon the representation made by appellants.

Pursuant to the special use permit issued, appellants constructed a food market upon said property and operated the same according to the implied condition of the permit between 7 a.m. and 11 p.m. Commencing November 1968, however, appellants unilaterally changed the schedule, keeping their store open 24 hours a day.

The nighttime operation of this business subjected the adjoining residents of the neighborhood to loud noise, disquiet and disturbance of the peace, prompting numerous complaints to respondent and to the city council. As a result of these complaints, a public hearing was held before respondent on August 28, 1969 to consider revocation or modification of the special use permit issued to appellants. Upon the evidence introduced at the public hearing respondent found that the use to which the permit applied had been conducted in contravention of the ordinance in a manner detrimental to the public safety, health and welfare (Ordinance No. 230, art. XVII, § 17.01(5)). Respondent, therefore, amended appellants' use permit requiring them to close their business operation between 11 p.m. and 7 a.m.

Thereupon appellants petitioned the lower court for a writ of mandamus

seeking an order directing respondent to vacate its action modifying appellants' permit. Appellants contended in that procedure, as they do now, that the ordinance permitting the amendment of their use permit upon the stated ground is unconstitutional.

The trial court denied relief, finding the ordinance to be constitutional and the determination of respondent to be supported by substantial evidence. Appellants do not contest the sufficiency of the evidence to support either the findings of respondent or the factual findings of the court below. The sole basis of their appeal involves the constitutionality of the zoning ordinance.

## I. *The provisions of the zoning ordinance.*

As pointed out by the trial judge in his excellent and helpful memorandum decision, "To appreciate petitioner's contention[s] it is necessary to summarize the history of certain legislation enacted by the City of Fairfax."

As originally enacted in 1964, Ordinance No. 230 (the zoning ordinance) listed all retail sales of personal property business as permitted uses in "the C or Commercial District" where appellants' business was later located (art. IX, § 9.01-1). In other words, a retail business was not required to obtain a special use permit to operate in the "C or Commercial District."

However, on January 16, 1967, the city council adopted an urgency interim ordinance (Ordinance No. 318), section 2 of which provided that "No structure shall be erected or altered, and no substantially new or different use shall be made of any property in the Commercial Zone above specified, unless and until a *Special Use Permit* therefore has been granted by the City Council."

Ordinance No. 318 was in effect until April 10, 1969. On April 7, 1969 another interim ordinance (Ordinance No. 345) was adopted which amended Ordinance No. 230, article IX, section 9.01-1 so as to permit "Retail sales of personal property businesses [in the C zone], *when located in existing buildings not requiring any expansion, alteration, or extension.*" (Italics added.) At the same time Ordinance No. 345 also added new section 9.30-8 to Ordinance No. 230 requiring a special use permit in zone C for retail sale businesses if located in new structures or in existing buildings which require structural alteration, extension or expansion.

Article XVII of Ordinance No. 230 grants respondent authority to revoke a permit if the use to which the permit applies has been conducted in a manner *"detrimental to the public safety, health and welfare . . ."* (§ 17.01(5)). Article XVII, section 17.02, grants the commission author-

ity to modify said permit if the grounds which would otherwise justify the revocation can be corrected or cured by a modification imposing new or additional conditions.

II. *Appellants are subject to the conditional use provisions of the zoning ordinance.*

Appellants argue, in effect, that they fit into an alleged hiatus which shields them from the requirement of operating under a special use permit. Their rationale is that when the modification hearing took place in August 1969 the pertinent provisions of the zoning ordinance were those which had been adopted on April 7, 1969 (effective April 10, 1969) and which supplanted the emergency interim ordinances under which appellants had originally obtained the required special use permit. Under these "new" provisions, appellants argue, a retail sales business in the C zone is "permitted" without a special use permit unless it is "to be located in new structures or in existing buildings which require structural alteration, extension or expansion" (§ 9.30-8) and that appellants' business, having been in existence since 1967, neither falls into the category of a new structure nor into that of an existing building requiring structural alteration, etc.

If this contention is valid, then this entire proceeding would be academic, i.e., if appellants in fact do not need a special use permit, there is no issue to be decided. ■ Appellants, in their closing brief, however, call our attention to section 14 of article XIV of Ordinance 230. We take judicial notice of that section which provides: "The purpose of a zoning permit is to determine compliance with the provisions of this ordinance. No owner shall use or permit the use of any land, structure or building or part thereof hereafter created, erected, changed, converted or enlarged wholly or partly, until a zoning permit has been issued by the building inspector; provided, however, that no zoning permit shall be required for the growing of field, garden or tree crops."

Appellants correctly point out that a "permit" is required in every zone except for the growing of crops and that the power of respondent to revoke or modify under article XVII, section 17, *supra,* applies to "any zoning permit." Conceding that operation of a grocery store in the C zone requires a "permit" under section 14 of article XIV, *supra,* appellants argue that a "conditional use permit" is not required. They then urge us to consider their original "special use permit" to be "as if it were a zoning permit obtained today" and that the action taken by respondent was in effect action taken to modify a "zoning permit" rather than a "special use permit."

This circuitous and transpositive reasoning leads us nowhere. The plain

fact is that appellants have, so far as the record before us shows, never applied for a "zoning permit" under section 14 of article XIV.

Thus, it seems to us clear that appellants, by bringing this action are estopped from asserting that they are not bound by the special use permit provisions of Ordinance No. 230.

In addition, we think the same result is achieved by the only permissible and reasonable interpretation that can be given to the 1969 amendments to the zoning ordinance. ■ As we have pointed out, appellants' special use permit was obtained under an interim ordinance (Ordinance No. 318) the substance of which was carried forward and made permanent by the enactment of Ordinance No. 345.

We agree with the trial court's opinion that "a fair and reasonable construction of the ordinances . . . is that petitioners' use of the property in question was a conditional use when it commenced, and has been at all times since, and now is, a conditional use . . . ."

■ III. *The ordinance is not unconstitutional.*

Our conclusion that appellants are bound by the conditional or special use provision of the zoning ordinance also disposes of appellants' attack on the constitutionality of the ordinance.

■ The California law is well settled that despite the most general standards in a statute, the delegation of power to a planning commission or other administrative body is constitutionally valid with respect to the *granting* of a conditional use permit (*City & County of S.F.* v. *Superior Court* (1959) 53 Cal.2d 236 [1 Cal.Rptr. 158, 347 P.2d 294]; *Stoddard* v. *Edelman* (1970) 4 Cal.App.3d 544 [84 Cal.Rptr. 443]; *Matthews* v. *Board of Supervisors* (1962) 203 Cal.App.2d 800 [21 Cal.Rptr. 914]), the rationale being that it is a near impossibility to devise standards to cover all possible situations in which a use permit can be issued (*Tustin Heights Assn.* v. *Bd. of Supervisors* (1959) 170 Cal.App.2d 619, 634 [339 P.2d 914]). ■ Likewise, with respect to *revocation* of a conditional use permit, it is constitutionally sufficient if the administrative body is required to make its decision in accord with the general health, safety and welfare standard (*Livingston Rock etc. Co.* v. *County of L.A.* (1954) 43 Cal.2d 121 [272 P.2d 4]; *Cantrell* v. *Board of Supervisors* (1948) 87 Cal.App.2d 471 [197 P.2d 218]; Cal. Zoning Practice (Cont. Ed. Bar 1969) § 7.73, p. 308).

■ Appellants concede the validity of the foregoing authorities, contending, however, that they are applicable only when the use involved is not a *permitted* use. Since we have concluded that this is precisely the situation

in the case at bench, any discussion of their applicability to a different and hypothetical factual setting is unnecessary.

■ IV. *The modification of appellants' special use permit did not constitute unlawful discrimination.*

Once again, appellants' argument is founded upon their assertion that they were not required to obtain a special use permit. We share the same concern expressed by the trial judge with respect to the constitutionality "of an ordinance which would empower a zoning agency to impose special restrictions upon a use of property, where such use is a legally permitted use, without a use permit."

But as the court below correctly noted, that point is not involved in this case because appellants were required to obtain a special use permit.

The potential fact that other businesses, similar to appellants', might now be able to operate in the same zone without a special use permit is immaterial. The question is not whether discrimination might exist but simply whether appellants' operation of their business was detrimental to the public safety, health and welfare. (*Cantrell* v. *Board of Supervisors, supra,* 87 Cal.App.2d 471). In the case at bar, after a proper notice and hearing and after receiving competent evidence, respondent found that it was. Under these circumstances, there can be no constitutional objection to the authorized modification of their use permit.

The order is affirmed.

Taylor, P. J., and Rouse, J., concurred.